ORDERED.

Dated: June 22, 2021

_Karen S. Jennemann_
Karen S. Jennemann
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re | ) |
| | ) |
| Danny P. Pope and Pamela E. Pope, | ) Case No. 6:20-bk-05026-KSJ |
| | ) Chapter 13 |
| Debtors. | ) |
| | ) |
| Danny P. Pope and Pamela E. Pope, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Adversary No. 6:20-ap-00091-KSJ |
| | ) |
| Carrington Mortgage Services, LLC, | ) |
| | ) |
| Defendant. | ) |

**<u>MEMORANDUM OPINION</u>**

Can a lender alter a mortgage without the borrowers' knowledge or consent, record the altered mortgage, and still keep its lien? The answer is "no," even if the borrowers get a windfall.

1

Here, the Debtors, Danny P. Pope and Pamela E. Pope, argue the mortgage held by the Defendant, Carrington Mortgage Services, LLC ("Carrington"), is unenforceable and void *ab initio* because its predecessor, Guaranty Residential Lending, Inc. ("Guaranty Residential"), unilaterally changed the mortgagor's name on the mortgage without informing the Debtors.  I agree and will enter a Final Judgment for the Debtors and against Carrington.[1]

## Undisputed Facts

At trial,[2] the parties relied on stipulated facts[3] and legal argument.  No witnesses testified.  In November 2003, during that frenzied period of real estate financing preceding the recession in 2007, Guaranty Residential, Carrington's predecessor, refinanced two mortgages encumbering the Debtor's home and paid the outstanding real estate taxes.[4]  Only Danny Pope signed the promissory note; however, both Pamela and Danny Pope signed the mortgage (the "Mortgage").[5]

---

[1] The Debtors' Amended Complaint (Doc. No. 21) contains three counts.  In Counts 1 and 2, the Debtors argue Carrington breached the contract between the parties and violated their Covenant of Good Faith and Fair Dealing implied in all contracts.  Carrington in its Motion to Dismiss seeks to dismiss or delay any ruling on Counts 1 and 2.  Doc. No. 26.  Because the Court will enter Final Judgment in favor of the Debtors on Count 3, finding Carrington's mortgage unenforceable and void *ab initio*, no further action is merited on Counts 1 and 2. At the status conference hearing on June 16, 2021, Plaintiffs consented to the Court granting the Motion to Dismiss as to Counts 1 and 2 (Doc. No. 26), based on the Court's favorable ruling on Count 3 of the Amended Complaint.

[2] The trial was held on March 25, 2021.

[3] Joint Stip. Undisp. Facts, Doc. No. 27.

[4] On March 31, 1993, Danny Pope obtained a mortgage loan of $84,000 secured by his home at 213 Pheasant Run Court, Longwood, Florida (the "Property").  Joint Stip. Undisp. Facts ¶¶ 3 and 4, Doc. No. 27.  On June 19, 2002, Danny Pope executed a Quitclaim Deed to the Property to himself and his wife, Pamela Engle Pope. Joint Stip. Undisp. Facts ¶ 5, Doc. No. 27.  On June 4, 2003, CIT Group/Consumer Finance Inc. gave the Debtors a second mortgage loan of $40,000 secured by the Property.  Joint Stip. Undisp. Facts ¶ 6, Doc. No. 27. In 2003, Guaranty Residential paid off both mortgage loans and the outstanding real estate taxes advancing proceeds of $113,762.39.  Joint Stip. Undisp. Facts ¶ 17, Doc. No. 27.

[5] The refinanced mortgage loan is evidenced by a promissory note for $131,950.00 and a mortgage in favor of Guaranty Residential Lending, Inc.  Joint Stip. Undisp. Facts ¶ 9, Doc. No. 27.

Guaranty Residential prepared all the loan/mortgage documents and chose the closing agent.[6] The closing agent was sloppy and did a terrible job. The Mortgage first incorrectly named the mortgagors as Danny Phillip Pope and *Paula* (**not** *Pamela*) Pope.[7] The closing agent then recorded the erroneous Mortgage in the public records of Seminole County, Florida.[8]

After realizing the mistake, the closing agent, without informing or seeking permission from the Debtors, double-downed on her error by crossing out "Paula Pope" and inserting "Pamela Pope" in two instances at the beginning of the Mortgage and once in the signature block of the Mortgage (the "Altered Mortgage").[9] The closing agent then recorded the Altered Mortgage with a notation "this mortgage is being re-recorded to correct mortgagor's name."[10] The Debtors did not know this was done. They did not sign or consent to the Altered Mortgage. The closing agent acted unilaterally with no involvement from the Debtors.[11] And they did not learn of the Altered Mortgage for many years.

Debtors made payments due under the Mortgage for over eleven years from January 2004 to October 2015.[12] Carrington unknowingly inherited this problem and

---

[6] Joint Stip. Undisp. Facts ¶¶ 11 and 14, Doc. No. 27.
[7] Pamela Engle Pope executed and intended to be bound by the Mortgage. Joint Stip. Undisp. Facts ¶ 15, Doc. No. 27.
[8] Joint Stip. Undisp. Facts ¶¶ 9 and 10, Doc. No. 27.
[9] Joint Stip. Undisp. Facts ¶¶ 20 and 21, Doc. No. 27.
[10] Joint Stip. Undisp. Facts ¶ 21, Doc. No. 27.
[11] Joint Stip. Undisp. Facts ¶ 23, Doc. No. 27.
[12] As of October 1, 2015, the principal balance due on the promissory note and Mortgage was $91,683.75. Joint Stip. Undisp. Facts ¶¶ 25 and 26, Doc. No. 27. The Debtors paid approximately $40,000 in principle.

is the current holder of the promissory note and Mortgage.[13] Eventually, the Debtors defaulted in their payments. Carrington started a foreclosure action, and, on March 7, 2016, Carrington recorded a related Notice of *Lis Pendens* in Seminole County, Florida.[14]

On October 1, 2019, the Debtors filed a joint petition[15] for Chapter 7 Bankruptcy and received a Discharge.[16] Because Danny Pope was the only party liable on the promissory note, he received a Discharge of any personal liability to Carrington. Carrington, assuming it still had a valid mortgage lien secured by the Property, continued with the pending foreclosure action.

## This Chapter 13 Case and Adversary Proceeding

Debtors continued to defend Carrington's foreclosure action but eventually filed this joint Chapter 13 bankruptcy case.[17] They received permission to sell the Property during this Chapter 13 case,[18] and the Chapter 13 Trustee is holding net proceeds of $219,264.31, pending adjudication of Carrington's lien rights in this adversary proceeding.[19]

---

[13] Joint Stip. Undisp. Facts ¶ 24, Doc. No. 27.
[14] Joint Stip. Undisp. Facts ¶ 27, Doc. No. 27.
[15] Voluntary Petition under Chapter 7, *In re Pope*, No. 6:19-bk-06441-KSJ (Bankr. M.D. Fla. Oct. 1, 2019), Doc. No. 1.
[16] Discharge of Debtor, *In re Pope*, No. 6:19-bk-06441-KSJ (Bankr. M.D. Fla. Jan. 6, 2020), Doc. No. 22.
[17] On September 4, 2020, the Debtor filed a Voluntary Petition for Bankruptcy under Chapter 13 in the United States Bankruptcy Court, Middle District of Florida, Orlando Division. Voluntary Petition Under Chapter 13, *In re Pope*, No. 6:20-bk-05026-KSJ (Bankr. M.D. Fla. Sept. 4, 2020), Doc. No. 1.
[18] Order Granting Amended Motion to Sell *Property Free and Clear of Liens* or Other Interests, *In re Pope*, No. 6:20-bk-05026-KSJ (Bankr. M.D. Fla. Oct. 22, 2020), Doc. No. 36.
[19] Joint Stip. Undisp. Facts ¶ 32, Doc. No. 27; Order Granting Amended Motion for Authority to Sell Property Free and Clear of Liens or other Interests, *In re Pope*, No. 6:20-bk-05026-KSJ (Bankr. M.D. Fla. Oct. 22, 2020), Doc. No. 36.

Carrington filed a Proof of Claim in this bankruptcy proceeding as a secured creditor claiming it is a secured creditor for $144,385.02.[20] In Count 3 of their Amended Complaint, the Debtors contend Carrington has no secured claim because the Altered Mortgage was void *ab initio*. Depending on this ruling, the Chapter 13 Trustee will distribute the monies she is holding either to Carrington, as a secured creditor, or the Debtors (or their other creditors) as required under their confirmed Chapter 13 Plan.

## **Carrington Has No Secured Claim**

Under Count 3 of the Amended Complaint,[21] the Debtors request the Court find the recordation of the Mortgage and Altered Mortgage void because they were executed and recorded in violation of the laws of the State of Florida that govern the Mortgage, specifically §§ 695.03(1), 695.09, and 695.26(1)(a) of the Florida Statutes. I agree and find the Mortgage void *ab initio*,[22] "null from the beginning, as from the first moment when the [Mortgage] was entered into."[23]

---

[20] Claim No. 3, *In re Pope*, No. 6:20-bk-05026-KSJ (Bankr. M.D. Fla. Oct. 2, 2020).
[21] Doc. No. 21.
[22] *Schneberger v. Wheeler*, 859 F.2d 1477, 1481 (11th Cir. 1988) ("If a contract or note is void *ab initio*, it is a nullity. This defense applies even against a holder in due course."); *Gotshall v. Taylor*, 196 So. 2d 479, 481 (Fla. 4th DCA 1967) ("The word 'nullity' means in law a void act or an act having no legal force or validity; invalid; null."); *House of Lyons v. Marcus*, 72 So. 2d 34, 35 (Fla. 1954) ("A transcription of a mortgage upon the record, without proper proof of the execution of the instrument, is a mere nullity.").
[23] *Void* ab initio, *Black's Law Dictionary* (10th ed. 2014) ("A contract is void *ab initio* if it seriously offends law or public policy . . . .").

5

Florida law controls.[24]  Paragraph 14 of the Mortgage states, "This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located [Florida]."[25]  Sections 695.03(1), 695.09, and 695.26(1)(a) of the Florida Statutes are relevant.

First, § 695.03(1) of the Florida Statutes, requires the person named in the conveyance to sign the document:

> To entitle any instrument concerning real property to be recorded, the execution must be acknowledged by the party executing it, proved by a subscribing witness to it, or legalized or authenticated in one of the following forms: (1) Within this state. -- An acknowledgment or a proof may be taken, administered, or made within this state by or before . . . any notary public . . .of this state, and the certificate of acknowledgment or proof must be under the seal of the court or officer, as the case may be.

Although Debtor *Pamela* Pope did execute the original Mortgage, she did not sign it as "*Paula*."  Pamela never signed or consented to recording the Altered Mortgage.  She did not learn of the Altered Mortgage until years after its recordation.  Guaranty Residential's closing agent just changed her name from Paula to Pamela and recorded the Altered Mortgage. So, *Paula* Pope did not sign the original Mortgage, and *Pamela* Pope did not sign the Altered Mortgage.  Both the original Mortgage and the Altered Mortgage violate § 695.03(1).

---

[24] "No conveyance, transfer, or mortgage of real property, or of any interest therein, nor any lease for a term of 1 year or longer, shall be good and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law . . . ." Fla. Stat. § 695.01(1).
[25] Ex. 3 of Joint Stip. Undisp. Facts ⁋ 14, Doc. No. 27-3.

6

Next, § 695.09 of the Florida Statutes, requires the notary to either know the signatory or receive proof of the signatory's identity, requiring:

> No acknowledgment or proof shall be taken . . . by any officer within . . . the United States unless the officer knows, or has satisfactory proof, that the person making the acknowledgment is the individual described in, and who executed, such instrument or that the person offering to make proof is one of the subscribing witnesses to such instrument.

Here, Paula Pope *never* appeared before the notary public, nor did she provide proof she was the "individual described in, and who executed such instrument" for either the original Mortgage or the Altered Mortgage. The parties never explained what the notary reviewed, but the notary could not have complied with this statutory requirement given the difference in names. Neither the original Mortgage nor the Altered Mortgage comply with § 695.09.

Last, § 695.26(1)(a) of the Florida Statutes, requires real estate conveyance documents to include the correct name of the signatories, providing:

> No instrument by which the title to real property or any interest therein is conveyed, assigned, encumbered, or otherwise disposed of shall be recorded by the clerk of the circuit court unless: (a) The name of each person who executed such instrument is legibly printed, typewritten, or stamped upon such instrument immediately beneath the signature of such person and the post-office address of each such person is legibly printed, typewritten, or stamped upon such instrument.

Assuming Debtor Pamela Pope signed the initial Mortgage, her actual name was not on the Mortgage. The Mortgage violated § 695.26(1)(a) and should not have been recorded. So, under these three statutes, the Mortgage and Altered Mortgage are void *ab initio*. They are unenforceable.

Carrington attempts to belittle the dispute, calling it a mere "scrivener's error." A scrivener's error is synonymous to a clerical error.[26] A clerical error results from a minor mistake or inadvertence.[27]

This is more than a mere mistake; here, the closing agent changed the mortgagor's name, affirmatively rewrote the Mortgage, and then recorded it without the mortgagors' knowledge. What if the closing got the interest rate or amortization rate wrong? Could or should the agent merely rewrite and re-record the legal document to fix the "error" without informing the other party? Of course not, and the mistake of a name requires a lender to at least contact the mortgagor to get the document properly re-executed. The parties agree the closing agent altered the Mortgage without the Debtors' permission, after it was notarized (improperly) and entered in the public records.

The statutory rules on real estate conveyance are exact and harsh when mistakes occur for a good reason—requiring strict compliance ensures lenders and their agents strictly adhere to the guidelines. Failure to do so results in the lender losing its secured status and right to payment.

Guaranty Residential's closing agent made more than a small mistake. She misnamed the borrower. The notary also failed in her role to serve as a third-party witness, deter fraud, and add a layer of verification that the people signing the

---

[26] *Scrivener's Error*, *Black's Law Dictionary* (10th ed. 2014).
[27] *Clerical Error*, *Black's Law Dictionary* (10th ed. 2014) ("[E]xamples of clerical errors are omitting an appendix from a document; typing an incorrect number; mis-transcribing or omitting an obviously needed word; and failing to log a call.").

document are really the people they claim to be. Then the closing agent altered the document and recorded the Altered Mortgage without contacting the Debtors. The problem was easily fixed (and this resulting litigation avoided) had the closing agent simply asked the Debtors to re-execute the documents. But that did not happen. So, the Mortgage and the Altered Mortgage now are both void *ab initio* because they were executed and recorded in violation of §§ 695.03(1), 695.09, and 695.26(1)(a) of the Florida Statutes.

## Carrington's Defenses

Carrington argues that its *lis pendens* filed with their first foreclosure complaint provided notice to any potential purchasers of the Property of Carrington's claims. While that may be true, the *lis pendens* cannot serve to "resurrect" an improperly recorded mortgage. The Circuit Court for the 18th Judicial Circuit in and for Seminole County, Florida already has held that neither the Mortgage nor the Altered Mortgage were "recorded according to law" and concluded they were void *ab initio*.[28] And, although this order is subject to a pending motion for reconsideration and is not final, the Court appreciates that a sister court looking at this exact issue and the inability of a *lis pendens* to "fix" the problem at least initially agreed with the ruling in this adversary proceeding.

---

[28] Order Granting in Part and Denying in Part Defendants and Counterclaimants, Danny P. Pope's and Pamela Pope's Motion for Summary Judgment, *Carrington Mortg. Servs. LLC v. Pope*, No. 2016-CA-00608 (Fla. 18th Cir. Ct. Mar. 15, 2019), Doc. No. 94.

A notice of *lis pendens* gives notice to the world of pending litigation affecting the property described.[29] Prospective purchasers and creditors should know that pending litigation could affect title to the real property.[30] In *First Union National Bank v. Diamond (In re Diamond)*, decided by the Bankruptcy Court for the Southern District of Florida,[31] the lender's mortgage was lost and never recorded, but the bank recorded a *lis pendens* upon filing their foreclosure complaint.[32] The lender argued the "recording of the Notice [of *lis pendens*] would have charged prospective purchasers and encumbrancers with constructive notice of the pendency of litigation and such purchasers and encumbrancers would take subject to the decree of the State court regarding First Union's alleged lien."[33] The Court found the notice of *lis pendens* provided constructive notice of First Union's lien.[34] All of that makes sense and complies with Florida law. A *properly* executed promissory note and mortgage were lost before recordation, but the secured creditor did not lose its secured status because it gave notice to the world by filing its *lis pendens*.

Here we have a very different situation. We do not have a properly executed Mortgage. We have both an improperly signed Mortgage and then a secretive attempt to cover the mistake by the closing agent's unilateral action in modifying and then

---

[29] *First Union Nat'l Bank v. Diamond (In re Diamond)*, 196 B.R. 635, 640 (Bankr. S.D. Fla. 1996).
[30] *First Union Nat'l Bank v. Diamond (In re Diamond)*, 196 B.R. 635, 640 (Bankr. S.D. Fla. 1996); *Kendall Grove Joint Ventures v. Martinez-Esteve (In re Kendall Grove Joint Ventures)*, 50 B.R. 64, 66 (Bankr. S.D. Fla. 2002).
[31] *First Union Nat'l Bank v. Diamond (In re Diamond)*, 196 B.R. 635, 638-39 (Bankr. S.D. Fla. 1996).
[32] *First Union Nat'l Bank v. Diamond (In re Diamond)*, 196 B.R. 635, 638-39 (Bankr. S.D. Fla. 1996).
[33] *First Union Nat'l Bank v. Diamond (In re Diamond)*, 196 B.R. 635, 639 (Bankr. S.D. Fla. 1996).
[34] *First Union Nat'l Bank v. Diamond (In re Diamond)*, 196 B.R. 635, 641 (Bankr. S.D. Fla. 1996).

recording the Altered Mortgage without the Debtors' consent. The Mortgage and Altered Mortgage violate Florida law and are void *ab initio*. Filing a Notice of *lis pendens* years later cannot salvage a void mortgage and does not restore Carrington's lien status.

Carrington's two other defenses also cannot save the void Mortgage: equitable subrogation and ratification. Carrington has no basis for equitable subrogation given it was the actions from the "unclean hands" of its predecessor, Guaranty Residential, that created the potential windfall received by the Debtors. Equitable subrogation applies when the "claimant satisfied an obligation of another and then stands in the shoes of the satisfied creditor"[35] and "will be granted to prevent unjust enrichment even though the party seeking it was negligent, as long as there is no prejudice."[36] A party seeking this equitable remedy, must do so with clean hands.[37]

Yes, if the Altered Mortgage were valid, the Debtors would owe about $90,000 to Carrington. But they paid on the debt for over eleven years and only later learned of the shenanigans with the Altered Mortgage. To allow Carrington to retain its secured lien with unclean hands would reward its predecessor's sloppy violations of the Florida Statutes and excuse their predecessor's failure to strictly comply with the

---

[35] *Bankers Lending Co., LLC v. Jacobson*, 253 So. 3d 1174, 1177 (Fla. 5th DCA 2018) (quoting *Tribeca Lending Corp. v. Real Est. Depot, Inc.*, 42 So. 3d 258, 262 (Fla. 4th DCA 2010).
[36] *Tribeca Lending Corp. v. Real Est. Depot, Inc.*, 42 So. 3d 258, 262 (Fla. 4th DCA 2010).
[37] *Tribeca Lending Corp. v. Real Est. Depot, Inc.*, 42 So. 3d 258, 262 (Fla. 4th DCA 2010) (quoting *Dale v. Jennings*, 107 So. 175, 180 (Fla. 1925) ("The clean hands doctrine 'applies not only to fraudulent and illegal transactions, but to any unrighteous, unconscientious, or oppressive conduct by one seeking equitable interference in his own behalf.'").

rules on conveying real estate. Public policy dictates that between the Debtors, who did nothing wrong, and the lender, who knew the rules and refused to follow them, the lender suffers the consequences. And this lender and others will know that if they do not strictly follow the rules, their loan documents are void and unenforceable.

Carrington's ratification argument—that the Debtors ratified the void Altered Mortgage by making payments for eleven years—also fails. Ratification of a contract must be made with full knowledge of the facts[38] and requires an express or implied intent to affirm a contract which the person did not enter, "or [the contract] is otherwise void or voidable."[39] Here, the Debtors did not learn of the recorded Altered Mortgage and could not challenge its validity until after the foreclosure action was filed. Debtors did not knowingly ratify the Altered Mortgage.

Debtors are entitled to a declaratory final judgment, which will be separately entered, that holds the Mortgage and Altered Mortgage are unenforceable and void *ab initio*. Carrington may receive no portion of the net proceeds from the sale of the Property held by the Chapter 13 Trustee.

### ###

Attorney Walter H. Porr, Jr. will serve a copy of this Memorandum Opinion on interested parties who are non-CM/ECF users and file a proof of service within 3 days of entry of the order.

---

[38] *Citron v. Wachovia Mortg. Corp.*, 922 F. Supp. 2d 1309, 1321 (M.D. Fla. 2013) ("If a party knows of the wrongful conduct at issue, does not reject it, and takes any material act inconsistent with an intent to avoid it or delays in asserting any remedial rights, then the party ratifies the transaction.").

[39] *Citron v. Wachovia Mortg. Corp.*, 922 F. Supp. 2d 1309, 1321 (M.D. Fla. 2013) ("Ratification is conduct that indicates an intention, with full knowledge of the facts, to affirm a contract which the person did not enter into or which is otherwise void or voidable.").